UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN ALLEN,

                               Case No. No. 14-12308

            Plaintiff,                District Judge Denise Page Hood

v.                             Magistrate Judge R. Steven Whalen

COMMISSIONER OF
SOCIAL SECURITY,

            Defendant.

_____ /

## REPORT AND RECOMMENDATION

Plaintiff John Fitzgerald Allen ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act. The parties have filed cross-motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED [Docket #13] and that Plaintiff's Motion for Summary Judgment be DENIED [Docket #10].

## I.   PROCEDURAL HISTORY

On August 26, 2010, Plaintiff applied for DIB, alleging disability as of July 2, 2010 (Tr. 95). Upon initial denial of the claim, Plaintiff requested an administrative hearing, held on June 11, 2012 in Detroit, Michigan (Tr. 19). Administrative Law Judge ("ALJ") Michael

R. Dunn presided (Tr. 19).  Plaintiff, represented by Barry F. Keller, testified (Tr. 26-38), as did Vocational Expert ("VE") Dr. Don Harrison (Tr. 39-48).   On January 15, 2013, ALJ Dunn determined that Plaintiff could return to his past relevant work as a loan officer (Tr. 16-17).  On April 16, 2014, the Appeals Council denied review of the claim.  Plaintiff filed suit in this Court on June 12, 2014.

## II.  BACKGROUND FACTS

Plaintiff, born January 9, 1964 was 49 at the time of the administrative decision (Tr. 17, 95).  He completed four or more years of college and worked previously as an account representative, assistant manager, distribution manager and  loan officer (Tr. 117-118).  He alleges disability as a result of spinal stenosis, a bulging disc, hypertension, and hyperlipidemia (Tr. 117).

### A.  Plaintiff's Testimony

 Plaintiff offered the following testimony:

He lived in an apartment in downtown Detroit (Tr. 26).  He drove up to six days each week (Tr. 26).  His ability to drive more than short distances was hampered by back problems (Tr. 26).  He stood 5' 9" and weighed 220 pounds (Tr. 27).  He was divorced with three grown children (Tr. 27).  He held a Bachelor of Science degree in Financial Management (Tr. 27).

Plaintiff was laid off on July 2, 2010 because he was physically unable to perform the sitting requirements of his job (Tr. 28).  He experienced lumbar pain with primarily right-

-2-

sided lower extremity radiculopathy (Tr. 29). He received treatment from an internist approximately once every six months (Tr. 30). He took Vicodin and had been advised to perform stretching exercises (Tr. 30). The Vicodin eased his back pain but caused the side effects of drowsiness and occasional blackouts (Tr. 31). He had not undergone steroid injections (Tr. 31). He had declined a 2008 recommendation for back surgery because there was "no guarantee" that the condition would improve (Tr. 31). In 2008, he obtained good results from physical therapy but was forced to discontinue treatment due to insurance limitations (Tr. 32).

Plaintiff kept a cane handy "as needed" since taking a fall at work (Tr. 32). Despite the Vicodin, he experienced severe back pain four to five times a month (Tr. 32). He coped with pain by stretching (Tr. 33). He experienced shortness of breath due to asthma (Tr. 33). He was unable to walk more than 20 feet before requiring a break to catch his breath (Tr. 33). He did not experience problems in self care activities but had been advised not to lift more than five pounds (Tr. 33). He was able to stand (with the help of a cane) for up to two to three hours (Tr. 34). He could sit for up to two hours (Tr. 34). After sitting for long periods, he required a seven to eight minute break (Tr. 34). He was able to perform laundry chores, cook, and perform limited household chores (Tr. 35). He attended church approximately once a month (Tr. 35).

In response to questioning by his attorney, Plaintiff stated that during severe bouts of pain, his legs "locked up" (Tr. 37). He testified that he coped with pain by taking Vicodin,

stretching, and lying on a flat surface (Tr. 38). He was unable to drive after taking more than one Vicodin (Tr. 38). He opined that with "rehabilitation" and "medical attention," his condition would improve to the point where he could resume work (Tr. 38).

### B.  Medical Records

#### 1.  Records Related to Plaintiff's Treatment

A May, 2008 MRI of the lumbar spine showed disc herniations with "crowding" of the nerve root at L3-L4 and L5-S1 (Tr. 168-169). In August, 2010, Subburaman Sivakumar, M.D. noted Plaintiff's report that he was unable to do "routine things" as a result of back pain (Tr. 170). Dr. Sivakumar, noting "disability due to back pain," prescribed Vicodin and recommended an additional MRI (Tr. 171).

In July, 2011, Dr. Sivakumar noted Plaintiff's report of daily back pain and the inability to stand or walk for more than 15 minutes (Tr. 197). Dr. Sivakumar opined that Plaintiff was "disabled from doing his routine job due to low back pain" (Tr. 197). October, 2011 treating records state that Plaintiff, currently taking Vicodin three times a day, was "not in any distress" (Tr. 195). Dr. Sivakumar's May, 2012 notes state that Plaintiff was unable to continue physical therapy due to financial constraints (Tr. 192).

#### 2.  Other Records

In April, 2011, Katherin H. Karo, M.D. performed a consultative examination on behalf of the SSA, noting Plaintiff's report that he was unable to sit or stand for more than four hours or walk for more than 10 minutes (Tr. 175). Dr. Karo observed good muscle tone

and normal sensation in all extremities (Tr. 176). She found "no physical limitation of sitting, standing, [or] walking" (Tr. 177, 179-182). An x-ray of the lumbosacral spine was unremarkable (Tr. 178).

The following month, Saada Abbas, M.D. completed a non-examining Residual Functional Capacity Assessment on behalf of the SSA, finding that Plaintiff was capable of lifting 50 pounds occasionally and 25 frequently; sitting, standing, or walking for six hours in an eight-hour workday; and pushing and pulling without limitation (Tr. 185). Dr. Abbas found that Plaintiff was limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling (Tr. 186). He found the absence of additional limitations (Tr. 187-188).

### C. Vocational Testimony

VE Harrison classified Plaintiff's past work as a retail manager as skilled and exertionally light (medium or heavy as performed) and loan officer, skilled/sedentary[1] (Tr. 42). The ALJ then posed the following question to the VE, describing a hypothetical

---

[1]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

-5-

individual of Plaintiff's age, education, and work experience:

> [A]ssume that our worker is capable of light exertional activity as defined in the regulations, lifting and carrying up to 20 pounds occasionally, 10 pounds frequently and light work but I want you to assume that our worker is capable of sitting up to four out of eight hours and standing and walking up to four out of eight hours. I want you to assume that our worker can occasionally climb ramps and stairs, can occasionally climb ladders and scaffolds, can occasionally balance, stoop, kneel, crouch or crawl. How, based on those limitations, would such a worker be able, be capable of performing any of the Claimant's past work as you've described it, either as the Claimant performed it or as customarily performed in the national economy? (Tr. 43).

The VE found that the above limitations would allow the individual to perform Plaintiff's past relevant work as the jobs were performed in the national economy (Tr. 43). The VE testified further that if the above described individual were limited to sedentary work, he would be able to perform the job of loan officer as generally performed in the national economy (Tr. 43).

The VE testified further that if the same individual were limited to work that was "simple, routine, and repetitive [and] unskilled . . . free of fast-paced production requirements and with few, if any, work place changes [and no exposure] to unprotected heights[,] hazardous machinery [or] the operation of a motor vehicle," he could perform the sedentary work of an optical inspector (1,200 jobs in the Detroit metropolitan economy); packing (1,000); clerk (1,200); and surveillance monitor (1,500) (Tr. 45).

In response to questioning by Plaintiff's attorney, the VE testified that if the same individual were limited by the need for "frequent, unscheduled breaks" for more than 20 percent of the workday, or, three or more "bad days" each month, all competitive

-6-

employment would be eliminated (Tr. 46-47).

### D.   The ALJ's Decision

Citing the medical transcript, ALJ Dunn found that Plaintiff experienced the severe impairments of "degenerative disc disease of the lumbar spine with disc herniation at L3-L4 and L5-S1" but that the condition did not meet or equal a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 11-12).  The ALJ determined that Plaintiff could perform sedentary work limited to occasional balancing, stooping, kneeling, crouching, crawling, and [occasional] climbing [of] ramps, stairs, ladders, ropes, and scaffolds (Tr. 12). Citing the vocational testimony, the ALJ determined that Plaintiff could perform the past relevant work of a loan officer "as the job is generally performed" (Tr. 16).

The ALJ discounted Plaintiff's allegations of limitation, noting that Plaintiff reported performing a wide range of activities on a regular basis (Tr. 15).  He rejected Dr. Sivakumar's opinion that Plaintiff was disabled, stating that it was unsupported by the clinical findings (Tr. 14).  He cited Dr. Karo's April, 2011 observation of a full range of motion, a normal gait, and "normal upper and lower extremity reflexes" (Tr. 14).  However, the ALJ accorded "little weight" to Dr. Karo's conclusion that Plaintiff did not experience any functional impairment, noting that imaging studies of the lumbar spine supported the finding that Plaintiff experienced some degree of limitation (Tr. 14).

### III.    STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether

it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir.  1985).  Substantial evidence is more than a scintilla but less than a preponderance.  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)).  The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*  800 F.2d 535, 545 (6th Cir.  1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight."  *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV.    FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence,

-8-

whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V.  ANALYSIS

Plaintiff argues generally that the ALJ's opinion is not supported by substantial evidence.  *Plaintiff's Brief,* 6-8, *Docket #10.*  He faults the ALJ for declining to adopt  the "disability decision" by Dr. Sivakumar.  *Id.*  He contends that as a result of the ALJ's failure to credit the disability opinion or his testimony, the hypothetical question to the VE did not include all of his relevant limitations.  *Id.*  In a separate argument, Plaintiff argues that his back condition meets the requirements for disability under Listing 1.04.  *Id.* at 8-9; 20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.04.

### A.  Substantial Evidence Supports the ALJ's Determination

Plaintiff argues, in effect, that Dr. Sivakumar's disability opinion ought to have been credited.  Plaintiff is correct that the rejection of a treating source opinion must be well supported and explained.  The failure to articulate "good reasons" for rejecting a treating

physician's opinion constitutes reversible error. *Gayheart v. CSS*, 710 F.3d 365, 376 (6th Cir.2013); *Wilson*, 378 F.3d at 544–546; 20 C.F.R. § 404.1527(c)(2)). "[T]he Commissioner imposes on its decision-makers a clear duty to 'always give good reasons in our notice of determination or decision for the weight we give [a] treating source's opinion.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir.2011). "These reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Gayheart*, at 376 (citing SSR 96–2p, 1996 WL 374188, *5 (1996)).

Plaintiff's argument fails for multiple reasons. First, Dr. Sivakumar's "disability opinions" consist of his August, 2010 comment that Plaintiff was disabled "due to back pain" and a July, 2011 statement that Plaintiff was "disabled from doing his routine job due to low back pain" (Tr. 171, 197). It is unclear whether the August, 2010 comment was based on Dr. Sivakumar's actual opinion or simply a restatement of Plaintiff's report. Dr. Sivakumar's July, 2011 statement that Plaintiff was disabled from performing his "routine job" does not imply that Plaintiff was unable to perform substantial gainful activity under the applicable regulations. 20 C.F.R. §416.920(a). Likewise, it is unclear which of Plaintiff's former jobs was the "routine job" referred to by Dr. Sivakumar.

Further, even assuming that Dr. Sivakumar's remarks can be interpreted to state that Plaintiff was disabled by Defendant's standards, the ALJ's rejection of Dr. Sivakumar's opinion is well supported by the Dr. Karo's consultative findings, the non-examining

-10-

determinations by Dr. Abbasi, and Dr. Sivakumar's treating records.  Dr. Karo's consultive observations support the ALJ's finding that Plaintiff could perform a significant range of sedentary work (Tr. 177, 179-182). Dr. Abbasi's finding that Plaintiff was capable of exertionally medium work  exceeds the RFC found in the administrative opinion  (Tr. 185). While Dr. Sivakumar's treating records and the May, 2008 MRI suggest that Plaintiff experienced some degree of limitation, the records indicate that Plaintiff's discomfort was controlled with medication (Tr. 195).

The ALJ's rejection of Dr. Sivakumar's "disability opinions" is also well articulated. The ALJ acknowledged that Plaintiff had received treatment with Dr. Sivakumar at least as early as August, 2010 (Tr. 13).  However, the ALJ noted that the clinical records did not include any "abnormal findings" consistent with disability as a result of lower back problems (Tr. 14).  He noted that in contrast to Dr. Karo's consultative findings, Dr. Sivakumar's "disability opinions" were unsupported by a functional assessment (Tr. 14).  The ALJ remarked that it was "not clear that [Dr. Sivakumar] was familiar with the definition of disability as contained in the Social Security Act and regulations" (Tr. 14).  The ALJ noted further that the issue of disability was reserved the Commissioner (Tr. 14); *see* 20 C.F.R. § 404.1527(d)(same).

The ALJ's finding that Plaintiff's claims were not wholly credible is also well supported.  The ALJ  noted that the professed limitations were undermined by Plaintiff's acknowledgment that he was able to care for his personal needs, prepare meals, perform a

-11-

variety of household chores, drive, shop, manage his financial affairs, and attend church (Tr. 15).  The ALJ observed that while Plaintiff alleged the medication side effect of drowsiness, the treating records did not contain any reports of medication side effects (Tr. 15).  Because the ALJ's findings are both well supported and thoroughly explained, the credibility determination should remain undisturbed.  "[A]n ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility.' " *Cruse v. Commissioner of Social Sec.*, 502 F.3d 532, 542 (6th Cir.2007) (citing *Walters v. Commissioner of Social Sec.,* 127 F.3d 525, 531 (6th Cir.1997)); See also *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th Cir.1993); *Anderson v. Bowen*, 868 F.2d 921, 927 (7th Cir.1989) (citing *Imani v. Heckler*, 797 F.2d 508, 512 (7th Cir.1986))(An ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record'").  For identical reasons, the ALJ did not err in omitting the rejected allegations from the hypothetical question.  *See Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118-119 (6th Cir.1994)(ALJ not required to include discredited claims in question to VE).

### B.  Listing 1.04C

 Plaintiff also argues that the evidence supports the finding that he was disabled under Listing 1.04.  20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.04C.[2]

---

[2]While Plaintiff argues simply that he is disabled under Listing 1.04, he relies on the language subsection C in making his argument.

At Step Three of the administrative sequence, "[a] Claimant who meets the requirements of a Listed Impairment will be deemed conclusively disabled [] and entitled to benefits." *Reynolds v. Commissioner of Social Security,* 424 Fed.Appx. 411, 414, 2011 WL 1228165, *2 (6th Cir. April 1, 2011); 20 C.F.R. §§ 404.1520(a)(4)(iii). "Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the SSA considers to be 'severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.'" *Id.* (citing 20 C.F.R. § 404.1525(a)).

Plaintiff's argument that he is disabled under Listing 1.04C is not well taken.  Listing 1.04 (Disorders of the spine) requires a threshold showing of one of the following: "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis [or] vertebral fracture."  Plaintiff's 2008 MRI showing disc herniation and degenerative disc disease, by itself, satisfies the threshold showing.  However, under subsection C, a claimant must also show   "[l]umbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, *and* resulting in inability to ambulate effectively, as defined in 1.00B2b." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04 (emphasis added).

Plaintiff cannot show that he is unable to "ambulate effectively."  Under the listings "[i]neffective ambulation is defined generally as having insufficient lower extremity

-13-

functioning [] to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of *both* upper extremities. § 1.00(B)(2)(emphasis added). While Plaintiff testified that he kept a cane "handy," neither the testimony nor the medical records show that he required the use of an assistive device requiring the use of both upper extremities (Tr. 32). In finding that the ALJ did not err at Step Three finding, I have also considered the activities generally required to show *effective* ambulation under this Listing:

> "To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. *Id.*

Plaintiff claimed that he was unable to sit or stand for more than four hours or walk for more than 10 minutes (Tr. 175). However, Dr. Karo's unremarkable physical examination and her finding of no exertional limitations in walking, standing, or sitting constitutes substantial evidence in support of the finding that Plaintiff was able to "ambulate effectively" (Tr. 177-179-182). Further, although the May, 2008 MRI supports the Plaintiff's allegations to some extent, his back problems did not prevent him from continuing to work until July, 2010 (Tr. 95). Because the ALJ's finding that Plaintiff did not meet or equal a listed impairment is supported by substantial evidence, remand is not warranted.

In closing, my recommendation to uphold the administrative decision should not be interpreted to trivialize Plaintiff's back problems. Nonetheless, the ALJ's decision was well within the "zone of choice" accorded the administrative fact-finder and should not be disturbed by this Court. *Mullen supra,* 800 F.2d at 545.

## VI.   CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Docket #13] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #10] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length

-15-

unless by motion and order such page limit is extended by the court.  The response shall

address specifically, and in the same order raised, each issue contained within the objections.


                                        s/ R. Steven Whalen
                                        R. STEVEN WHALEN
                                        UNITED STATES MAGISTRATE JUDGE
Dated: May 14, 2015


                        <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was sent to parties of record
on May 14, 2015, electronically and/or by U.S. mail.

                                        s/Carolyn M. Ciesla
                                        Case Manager to the
                                        Honorable R. Steven Whalen